## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

JOHN C. EASTMAN,
c/o Burnham & Gorokhov, PLLC
1424 K Street NW, Suite 500
Washington, D.C. 20005

    *Plaintiff,*

  v.

BENNIE G. THOMPSON, in his official
capacity as Chairman of the House Select
Committee to Investigate the January 6
Attack on the United States Capitol;
Rayburn House Office Building, 2466,
Washington, DC 20515

JOHN WOOD, in his official capacity as
Investigative Counsel for the Minority
Members of the House Select Committee to
Investigate the January 6 Attack on the
United States Capitol;
1540A Longworth House Office Building
Washington, D.C. 20515

TIMOTHY J. HEAPHY, in his official
capacity as Chief Investigative Counsel for
the House Select Committee to Investigate
the January 6 Attack on the United States
Capitol;
1540A Longworth House Office Building
Washington, D.C. 20515

SELECT COMMITTEE TO INVESTIGATE
THE JANUARY 6TH ATTACK ON THE
UNITED STATES CAPITOL

VERIZON COMMUNICATIONS, INC.; 1095
Avenue of the Americas, New York, NY 10036

    *Defendants.*

Civil Action No.: _____

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiff brings this action against Defendants for declaratory and injunctive relief and

1

alleges as follows:

## **INTRODUCTION**

1.      The November 3, 2021 presidential election was one of the most controversial in American history. A significant portion of the population came to believe the election was tainted by fraud, disregard of state election law, misconduct by election officials and other factors.

2.      On January 6, 2021, approximately ½ million people gathered for a "Save America" rally outside the White House to exercise their First Amendment freedoms of speech and assembly and the right to petition their government for redress of grievances.

3.      Unfortunately, two miles away at the United States Capitol, several hundred protestors entered the Capitol building. Some of the individuals who entered the Capitol committed criminal acts, including assault and property damage.

4.      The House adopted House Resolution 503 on June 30, 2021, creating the Select Committee to Investigate the January 6 Attack on the United States Capitol ("J6 Committee"). Ex. A. Resolution 503 required the Speaker to nominate 5 of 13 members "after consultation with the minority leader." The Speaker did not engage in meaningful consultation with the minority leader. The J6 Committee consists of seven members of the Speaker's political party and two from the minority party. It does not have a "ranking minority member." The two minority members are well known to be aligned with the majority party on issues relevant to the J6 Committee's work. The Speaker herself admitted that such a highly partisan congressional committee was "unprecedented."

5.      Plaintiff Dr. John Eastman is a law professor and practicing attorney. He is a political conservative who supported former President Trump, which puts him at odds with the Committee's highly partisan membership. Dr. Eastman is not alleged to have entered the Capitol on Jan. 6.

6.      Without prior notice to Dr. Eastman, the J6 Committee issued a subpoena to Verizon requesting records for Dr. Eastman's personal cell phone. The subpoena seeks nine categories of information on Dr. Eastman's personal cell phone use over a three-month period. The subpoena

does not contain any provision for protection of attorney client privilege.

7.       The J6 Committee's subpoena to Verizon is invalid for several reasons. First, public statements by J6 Committee members make clear that the Committee is attempting to exercise a law enforcement function, rather than genuine legislative activity. The United States Congress has no power to issue subpoenas for law enforcement purposes.

8.       Second, the subpoena was issued in violation of House Rules and the J6 Committee's own authorizing resolution. As explained below, the Committee's lack of validly appointed minority members or a validly appointed "ranking minority member" makes such compliance impossible. A subpoena issued in violation of applicable House Rules is invalid.

9.       Third, the subpoena violates the Fourth Amendment. Dr. Eastman has a reasonable expectation of privacy in the private cellphone information which the Committee now seeks to access without a search warrant.

10.       Fourth, the subpoena violates the First Amendment. The subpoena seeks detailed information on Dr. Eastman's protected First Amendment activity. Allowing a highly partisan congressional committee to invade the First Amendment activity of a political opponent would have a chilling effect on free speech.

11.       Finally, the subpoena infringes attorney client privilege. In addition to his academic work, Dr. Eastman is engaged in the practice of law representing clients. The subpoena makes no provision for protecting attorney client privileged information.

## PARTIES

12.       **Plaintiff JOHN C. EASTMAN** ("Dr. Eastman") is a law professor and attorney.

13.       **Defendant BENNIE G. THOMPSON** ("Chairman Thompson") is the U.S. Representative for Mississippi's 2nd District and the Chairman of the House Select Committee to Investigate the January 6 Attack on the United States Capitol. He is a member of the Democrat

party. Chairman Thompson signed the subpoena in question and is sued in his official capacity.

14.     **Defendant TIMOTHY J. HEAPHY** ("Heaphy") is the Chief Investigative Counsel for the House Select Committee to Investigate the January 6 Attack on the United States Capitol. On information and belief, he drafted and served the subpoena in question and is sued in his official capacity.

15.     **Defendant JOHN WOOD ("Wood")** is the Chief Counsel to the Minority Members of the House Select Committee to Investigate the January 6 Attack on the United States Capitol. Upon information and belief, he participated in the drafting and service of the subpoena in question and is sued in his official capacity.

16.     **Defendant Verizon, Inc.** ("Verizon") is a corporation headquartered in New York City and incorporated in Delaware. Verizon is listed as a Defendant to ensure that Plaintiff can obtain effective relief. It is susceptible to the jurisdiction of this Court because it conducts substantial business in this district.

17.     **Defendant Select Committee to Investigate the January 6th Attack on the United States Capitol** is a select committee created by House Resolution 503 passed by the U.S. House of Representatives on June 30, 2021.

## JURISDICTION AND VENUE

18.     This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because this case arises under the Constitution and laws of the United States, including U.S. Const. amends. I, IV; 18 U.S.C. §§ 1039, 2702, 2707; 28 U.S.C. §§ 1367, 2201, 2202; 47 U.S.C. § 222.

19.     Venue is proper because Chairman Thompson officially resides in the District. 28 U.S.C. § 1391.

## BACKGROUND

### I.  Challenges to Congressional Subpoenas

20.     Not infrequently, federal courts adjudicate the legality of congressional subpoenas.

21.     When Congress "seeks information directly from a party," that party "can resist and thereby test the subpoena." *Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 501 n.14 (1975). But when Congress "seeks that same information from a third person," that option is not available to the party; the third party might not have an interest in protecting the information or resisting the subpoena, and its "compliance" with the subpoena "could frustrate any judicial inquiry." *Id.* For that reason, the law allows the person whose information will be exposed to sue in federal court for an "injunction or declaratory judgment" to block the subpoena's "issuance, service on, or enforcement against" the "third party." *U.S. Servicemen's Fund v. Eastland*, 488 F.2d 1252, 1259 (D.C. Cir. 1973), *subsequent merits decision rev'd on other grounds*, 421 U.S. 491.

22.     The key questions in such cases are "whether a legitimate legislative purpose is present," *Eastland*, 421 U.S. at 501; whether the Committee issuing the subpoena has acted in conformity with House Rules and its authorizing resolution, *Yellin v. United States*, 374 U.S. 109, 114 (1963); whether the subpoena infringes on constitutional rights, *Watkins v. United States*, 354 U.S. 178, 188, 198; and whether it seeks privileged information, *see*, *e.g.*, Congressional Research Service No. 7-5700, *Investigative Oversight: An Introduction to the Law, Practice, and Procedure of Constitutional Inquiry*, pp. 32-36 (April 7, 1995) (attorney-client privilege); *Senate Select Committee on Presidential Campaign Activities v. Nixon*, 498 F.2d 725, 727, 730–731 (D.C. Cir. 1974) (executive privilege). Congress has no "'general' power to inquire into private affairs and compel disclosures," *McGrain v. Daugherty*, 273 U.S. 135, 173-74 (1927), and "there is no congressional power to expose for the sake of exposure," *Watkins*, 354 U.S. at 200. "Investigations conducted solely for the personal aggrandizement of the investigators or to 'punish' those investigated are indefensible." *Id.* at 187. *See generally*, *Trump v. Mazars USA, LLP*, 140 S. Ct. 2019, 2031-32 (2020).

23.     The "legitimate legislative purpose" requirement stems directly from the

Constitution. "The powers of Congress … are dependent solely on the Constitution." *Kilbourn v. Thompson*, 103 U.S. 168, 182-89 (1880). The Constitution permits Congress to enact certain kinds of legislation. *See, e.g.*, Art. I, § 8. Thus, Congress' power to investigate "is justified solely as an adjunct to the legislative process." *Watkins*, 354 U.S. at 197. "Congress is not invested with a general power to inquire into private affairs. The subject of any inquiry always must be one on which legislation could be had." *Eastland*, 421 U.S. at 504 n.15 (cleaned up); *see also Quinn v. United States*, 349 U.S. 155, 161 (1955) ("[T]he power to investigate" does not "extend to an area in which Congress is forbidden to legislate.").

24.     Additionally, because Congress must have a legitimate legislative purpose, it cannot use subpoenas to exercise "any of the powers of law enforcement." *Quinn*, 349 U.S. at 161. Those powers "are assigned under our Constitution to the Executive and the Judiciary." *Id*. Put simply, Congress is not "a law enforcement or trial agency," and congressional investigations conducted "for the personal aggrandizement of the investigators" or "to 'punish' those investigated" are "indefensible." *Watkins*, 354 U.S. at 187. Our tripartite system of separated powers requires that "any one of the[] branches shall not be permitted to encroach upon the powers confided to the others, but that each shall by the law of its creation be limited to the exercise of the powers appropriate to its own department and no other." *Kilbourn*, 103 U.S. at 190-91.

25.     Moreover, when a subpoena is issued by a single committee, any legislative purpose is not legitimate unless it falls within that committee's jurisdiction and otherwise complies with House Rules. "The theory of a committee inquiry is that the committee members are serving as the representatives of the parent assembly in collecting information for a legislative purpose." *Watkins*, 354 U.S. at 200. Congress therefore must "spell out that group's jurisdiction and purpose with sufficient particularity … in the authorizing resolution," which "is the committee's charter." *Id*. at 201. The committee "must conform strictly to the resolution." *Exxon Corp. v. FTC*, 589 F.2d 582,

592 (D.C. Cir. 1978). And when an investigation is "novel" or "expansive," courts will construe the committee's jurisdiction "narrowly." *Tobin v. United States*, 306 F.2d 270, 275 (D.C. Cir. 1962).

26.     Subpoenas issued by the J6 Committee to individuals seek documents and testimony clearly protected by attorney-client privilege, attorney work product, and other privileges, and also seek confidential information in contravention of First and Fourth Amendment rights.

27.     The information sought from Verizon by the J6 Committee for Dr. Eastman includes information that, if it exists, would on its face be protected by attorney-client and/or attorney work product privileges.

28.     The information sought from Verizon by the J6 Committee would also intrude on Dr. Eastman's rights to freedom of association as protected by the First Amendment of the U.S. Constitution. *See, e.g.*, *NAACP v. Alabama*, 357 U.S. 449, 462 (1958).

29.     The expansive scope of the information sought from Verizon is tantamount to a "general warrant," in violation of the Fourth Amendment.

30.     The J6 Committee has issued preservation demands to social media companies, requiring those companies to preserve, among other things, the "content of communications, including all emails, voice messages, text or SMS/MMS messages, videos, photographs, direct messages, address books, contact lists, and other files or other data communications stored in or sent from the account[s]" of individuals "who were listed on permit applications or were otherwise involved in organizing, funding, or speaking at" constitutionally-protected rallies held in Washington, D.C. on January 5 and 6, 2021."

31.     In late November, the J6 Committee served subpoenas on telecommunications companies, including Verizon, seeking, among other things, "All call, message (SMS & MMS), Internet Protocol ("IP"), and data-connection detail records associated with the Phone Numbers [listed on a separate schedule], including all phone numbers, IP addresses, or devices that

communicated with the Phone Number via delivered and undelivered inbound, outbound, and routed calls, messages, voicemail, and data connections." Exhibit B, Schedule ¶ 2.

32.     The return date for production of the documents and electronic data demanded in the Subpoena issued to Verizon was Wednesday, December 8, 2021, but on information and belief, Verizon obtained an extension until Wednesday, December 15, 2021.

33.     Dr. Eastman received a FedEx package from Defendant Verizon after the close of business hours on Friday, December 3, 2021, notifying him that Verizon would comply with the subpoena unless it received "a court document challenging the subpoena."

## II.     The J6 Committee Is Acting *Ultra Vires*

### a.     The J6 Committee's Law Enforcement Purpose

34.     Numerous statements and actions by members of the J6 Committee and others indicate that the Committee's overriding purpose is criminal investigation and law enforcement, not legislative. Those statements and actions include:

- Chairman Thompson alleged in a lawsuit filed against former President Trump and one of his attorneys that Trump, the attorney, and others, in violation of the Ku Klux Klan Act of 1871 (codified at 42 U.S.C § 1985) "conspired to prevent, by force, intimidation and threats, … Member[s] of Congress, from discharging [their] official duties to approve the count of votes cast by members of the Electoral College following the presidential election held in November 2020." Complaint ¶ 3, *Thompson v. Trump et al.*, No. 21-cv-00400 (D.D.C., filed Feb. 16, 2021). They did this, Thompson alleged, by encouraging an "assembly of persons" "denominated as the 'Save America' rally held at the Ellipse in Washington, D.C., on January 6, 2021." *Id.* ¶¶ 4, 6.

- Representative Kinzinger, a member of the J6 Committee, stated in his opening remarks during the first hearing of the J6 Committee on January 27, 2021:

    [O]ur mission is very simple: to ensure the trust and ensure accountability….

Congress was not prepared on January 6th. We weren't prepared because we never imagined this could happen: an attack by our own people, fostered and encouraged by those granted power through the very system they sought to overturn."

- On September 24, 2021, Rep. Raskin, a member of the J6 Committee, made the following statement during an appearance on The Dean Obeidallah Show:

  **[Interviewer]:** Are you surprised that all these people are charged for storming the capitol who were there, that Donald Trump has not been charged with anything?

  **Rep. Raskin:** Well of course he was charged with "incitement to violent insurrection" in the House and he was impeached for it … [b]ut you're right he's not been criminally charged yet for it. But we're perfectly willing to turn over evidence of criminal acts to the Department of Justice.

- Chairman Thomas and Vice-Chair Cheney have reiterated in their public statements that the purpose of their investigation is to ensure "those responsible are held accountable," to "tell[] the complete story of the unprecedented and extraordinary events of January 6th," and to "get answers for the American people about what happened on January 6th." The Law Enforcement Experience on January 6th: Hearing Before the H. Select Committee to Investigate the January 6th Attack on the United States Capitol, 117th Cong. (2021) Statement of Elizabeth Cheney, Vice Chair); Press Release, Thompson & Cheney Statement on Pentagon Officials' Reported Actions After January 6th (Sept. 16, 2021); Press Release, Thompson Statement on Cooperation of Witnesses (Oct. 14, 2021).

- On December 13 during a J6 Committee hearing, Rep. Cheney stated that a "key question before this Committee" was "did Donald Trump through action or inaction corruptly seek to obstruct or impede Congress' official proceedings to count electoral votes?" This language closely tracks the 18 U.S.C. § 1512(c), a criminal statue currently in use to

prosecute many of the persons who entered the Capitol on January 6.

35.     Three members of the Committee, Representatives Zoe Lofgren, Jamie Raskin, and Adam Schiff, were part of the House impeachment teams for one or the other of the two House impeachments of former President Trump. Rep. Raskin with the impeachment manager for the House's second impeachment of former President Trump, and Rep. Schiff was the impeachment manager for the first. The Senate did not convict on either impeachment.

36.     Chairman Thompson has stated publicly that one of the J6 Committee's purposes is to "determine guilt or innocence"—functions that belong to the Executive and Judicial branches of government, not the Legislative branch.

37.     Because Chairman Thompson's subpoena to Verizon threatens to expose Plaintiff's confidential information and lacks "a legitimate legislative purpose," this Court has the power to declare it invalid and to enjoin its enforcement. *Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 501 n.14 (1975) ("On this record, the Court of Appeals correctly held that the District Court properly entertained this action initially."). Plaintiff is entitled to that relief.

b.  **The J6 Committee's Violation of House Rules and its Own Authorizing Resolution**

i.  **The J6 Committee's Violation of House Rules and Authorizing Resolution Provisions on Minority Membership**

38.     H.Res. 503 specifically requires that "5 [of the 13 members] must be appointed after consultation with the minority leader." Ex. A, p. 3.

39.     On July 19, 2021, Minority Leader Kevin McCarthy recommended Representatives Jim Banks, Jim Jordan, Rodney Davis, Kelly Armstrong, and Troy Nehls to serve as the Republican members of the J6 Committee.

40.     Speaker of the House of Representatives Nancy Pelosi refused to accept two of Minority Leader McCarthy's appointments, Jim Banks and Jim Jordan.

41.     Speaker Pelosi acknowledged that her refusal to seat the Republican members

recommended by the Minority Leader was "unprecedented."

42.    Minority Leader McCarthy thereafter declined to appoint any Republican members to the J6 Committee.

43.    Speaker Pelosi instead appointed Republican Representatives Liz Cheney and Adam Kinzinger, who, unlike most of the Republican caucus, are publicly aligned with the majority party on all issues relevant to the Select Committee.

44.    House GOP Rule 14(a)(1) provides that the Republican Steering Committee nominates ranking minority members to committees of the House, who are then voted on by the full Republican House Conference.

45.    Neither Representative Cheney nor Representative Kinzinger were nominated by the Republican Steering Committee, nor voted upon by the Republican House Conference, to serve as ranking minority member on the J6 Committee.

46.    There is no ranking minority member on the J6 Committee.

47.    House Rules require that "Consultation with the ranking minority member shall include three days' notice before any deposition is taken." House Committee on Rules, "Regulations for the Use of Deposition Authority," ¶ 2.

48.    House Rules require that "When depositions are conducted by committee counsel, there shall be no more than two committee counsel permitted to question a witness per round," one of whom "shall be designated by the chair and the other by the ranking minority member per round." *Id.* ¶ 5.

49.    House Rules mandate that rounds of questioning during a deposition "shall provide equal time to the majority and minority." *Id.* ¶ 6.

50.    Without a ranking minority member, there is no one serving on the committee with whom to consult, *id.* ¶ 2, or to designate counsel for the minority to question witnesses *id.* ¶ 5, or to

whom equal time must be given. *Id.* ¶ 6.

51.     House Rules afford to witnesses called before committees the right to make a request "to subpoena other witnesses." House Rule XI.2(k)(5)

52.     Without a ranking member to appoint counsel to participate in the questioning of such witnesses, there is no one to perform the adversarial questioning role.

53.     House Rules grant to minority members the ability to call witnesses. House Rule XI.2(j)(1).

54.     There are no members of the J6 committee appointed after consultation with the Minority Leader, and therefore no members to exercise the authority for the minority to call witnesses.

55.     Speaker Pelosi ultimately appointed only 9 members of the Committee, contrary to the authorizing resolution, which provides that the Speaker "shall" appoint 13 members to the Committee.

56.     The J6 Committee is constituted in violation of House Rules.

57.     The J6 Committee is exercising deposition and subpoena authority in violation of House Rules.

### ii.   The J6 Committee has Exceeded the Scope of the Authorizing Resolution

58.      The J6 Committee's authorizing resolution sets forth 3 "purposes" and 3 "functions of the Committee. Ex. A.

59.     Each of the "purposes" and "functions" described in the authorizing resolution focuses on a specific event – the entry of large numbers of unauthorized persons into the Capitol building on January 6, 2021. Congress has not given the Committee a roving commission to investigate any aspect of the 2020 election it finds troubling.

60.     The J6 Committee has exceeded its authorizing resolution in seeking three months

of detailed cellphone information from Dr. Eastman, who is not alleged to have entered the Capitol on Jan 6 or to be connected with those who did enter in some substantial way.

### III.    Chairman Thompson's Subpoena to Verizon

61.    The expansiveness of the subpoena issued by Chairman Thompson to Verizon confirms that the J6 Committee's purpose is law enforcement, not legislative.

62.    Without any evidence that Dr. Eastman had communications with anyone who trespassed on Capitol grounds on January 6, 2021, Chairman Thompson demands in his subpoena all communications data for Dr. Eastman's phone records, text messages, contact lists, etc. for the period of November 1, 2020 to January 31, 2021.

63.    Chairman Thompson is well aware that Dr. Eastman, in addition to his academic work, is a practicing attorney. However, the subpoena does not exempt from disclosure communications protected by attorney-client privilege or the attorney work product doctrine.

64.    Chairman Thompson did not consult with the ranking minority member of the committee before sending the subpoenas, because there is no ranking minority member of the committee.

65.    The subpoena demands, among other things, call and text message logs. As Congress noted in its "findings" section of the Telephone Records and Privacy Protection Act of 2006, "call logs may reveal the names of telephone users' doctors, public and private relationships, business associates, and more" and "the unauthorized disclosure of telephone records … assaults individual privacy …." For that reason, disclosure of such information "without prior authorization from the customer to whom such confidential phone records information relates" is expressly prohibited "except as otherwise permitted by applicable law. 18 U.S.C. § 1039(b), (c); *see also* 47 U.S.C. § 222(c)(1) (restricting disclosure of customer proprietary information "except as required by law or

with the approval of the customer"). Exceptions specified in section 222(d) of the Communications Act of 1934 shall apply, but those exceptions, such as disclosure to law enforcement and emergency service providers "in order to respond to the user's call for emergency services," 47 U.S.C. § 222(d)(4)(A), are not relevant to the subpoenas at issue here.

66.     The subpoenas demand "data-connection detail" records and "call…records." That ambiguous wording could be interpreted to include cell site location information, which law enforcement officers must get a warrant to obtain under the Supreme Court's 2018 decision in *Carpenter v. United States*, 138 S. Ct. 2206 (2018). Whether or not Verizon chooses to interpret it as such, the J6 Committee could advance such an interpretation in any effort to enforce the subpoena if it deems Verizon's response insufficient.

67.     With law enforcement and other exceptions not relevant here, Section 2702(a)(1)-(2) of the Stored Communications Act prohibits entities providing electronic communications and remote computing services, such as Verizon, from knowingly divulging the "contents" of any communications while in electronic storage by the entity. 18 U.S.C. § 2702(a)(1)-(2). Section 2702(a)(3) prohibits such entities from knowingly divulging "a record or other information pertaining to a subscriber to or customer of such service (not including the contents of communications covered by paragraph (1) or (2)) to any governmental entity." *Id.* § 2702(a)(3).

68.     Neither the individual defendants, nor the J6 Committee, nor Congress itself, is a "government entity" entitled to require disclosure pursuant to 18 U.S.C. § 2703, as "government entity" is defined in 18 U.S.C. § 2711 to mean "a department or agency of the United States or any State or political subdivision thereof."

69.     Even were the individual defendants to qualify as a "government entity" entitled to require disclosure pursuant to 18 U.S.C. § 2703, on information and belief, they did not obtain a warrant prior to the issuance of the subpoenas (or at any time since), as required by 18 U.S.C. §§

2703(a), (b)(1)(A), and (c)(1)(A). Nor did they obtain consent from the subscribers whose records are sought by the subpoena, § 2703(c)(1)(C), or provide prior notice to the subscribers, as alternatively required by Section 2703(b)(1)(B). On information and belief, neither did they obtain a court order or written certification of a supervisory official that the subpoenas qualify for delayed notification under 18 U.S.C. § 2705.

70.     Dr. Eastman brings this suit to challenge the validity and enforceability of Chairman Thompson's subpoena. Now that the subpoena has issued, Verizon faces an unfair choice: ignore the subpoena and risk contempt of Congress, or comply with the subpoena and risk liability if the subpoenas are invalid or unenforceable. To resolve these conflicting commands, the D.C. Circuit has held—in a procedurally identical case—that the district court should issue "a stay in the enforcement of the [congressional] subpoena[]" "until [it] has an opportunity fully to consider" these 'serious constitutional questions' on the merits so that 'compliance by [the recipient of the subpoena] does not frustrate … judicial inquiry.'" *Eastland*, 488 F.2d at 1256-57. *Eastland* is controlling. The decision squarely holds that interim relief is warranted under precisely these factual circumstances.

71.     The D.C. Circuit has also held that the recipient of a subpoena should not be subjected to conflicting commands while the legitimacy of the subpoena is being litigated. *See United States v. Deloitte LLP*, 610 F.3d 129, 142 (D.C. Cir. 2010).

72.     Congress thus cannot take any action against Verizon until this litigation is finally resolved.

### COUNT I
### The J6 Committee's Exercise of Subpoena Power is *Ultra Vires*

73.     Plaintiff restates the foregoing paragraphs as if set forth fully herein.

74.     The J6 Committee is unconstitutionally pursuing law enforcement rather than legislative ends.

75.     Congress's investigative powers are ancillary to its *legislative* authority, and are limited to that extent. *Trump v. Mazars USA, LLP*, 140 S. Ct. 2019, 2031 (2020).

76.     The J6 Committee is not constituted in accord with House Rules and H.Res. 305.

77.     The J6 Committee has exceeded its authorizing resolution by seeking information on Dr. Eastman that does not have a reasonable relation to the Committee's functions and purposes.

78.     Congress' failure to act in accordance with its own rules is judicially cognizable. *Yellin v. United States*, 374 U.S. 109, 114 (1963).

79.     The subpoena issued to Verizon seeking to obtain personal telecommunications records is invalid and unenforceable, and should be quashed.

### COUNT II
### Intrusion on Attorney-Client Privilege and Attorney Work Product

80.     Dr. Eastman restates the foregoing paragraphs as if set forth fully herein.

81.     Dr. Eastman is an attorney and communicates with clients in part by telephone and text messages.

82.     The subpoena issued by Chairman Thompson Verizon would require Verizon to disclose information protected by the attorney-client privilege and attorney work product doctrines.

83.     Section 2517 of Title 18 provides that "No otherwise privileged wire, oral, or electronic communication intercepted in accordance with, or in violation of, the provisions of this chapter shall lose its privileged character." 18 U.S.C. § 2517(4).

84.     The subpoena is therefore unenforceable to the extent it seeks privileged material, and should be quashed.

### COUNT III
### Violation of First Amendment

85.     Dr. Eastman restates the foregoing paragraphs as if set forth fully herein.

86.     The subpoena issued by Chairman Thompson to Verizon seeks call logs and text

message logs the disclosure of which would infringe on the First Amendment speech, association, assembly and petition rights not only of Plaintiff but of those with whom he associated.

87.     Chairman Thompson's subpoena of Verizon purports to identify Dr. Eastman's personal cell phone number and requests the data associated with it.

88.     Dr. Eastman used his personal phone to engage in protected advocacy and other speech, including privileged speech with clients and spouses.

89.     Dr. Eastman also used his personal phone to engage in private conversations with friends and family.

90.     All of these associational and expressive activities are protected by the First Amendment. *See Buckley v. Valeo*, 424 U.S. 1, 64 (1976); *Black Panther Party v. Smith*, 661 F.2d 1243, 1267 (D.C. Cir. 1981); *Am. Fed'n of Lab. & Cong. of Indus. Organizations v. Fed. Election Comm'n*, 333 F.3d 168, 179 (D.C. Cir. 2003).

91.     The J6 Committee has no legitimate *legislative* purpose for seeking the protected information demanded by the subpoenas.

92.     Even if the J6 Committee had a valid reason to seek protected information, the Committee has put in place no safeguards to protect Dr. Eastman's rights. It provided Dr. Eastman with no notice of the subpoena and has provided him with no opportunity to assert claims of privilege or other legal protections over the demanded information. It also has no provisions for a taint team or analogous filter for privileged information. The entirety of the demanded information, including that which is constitutionally or otherwise protected, will be turned over to the Committee to do with as it pleases.

93.     The Verizon subpoena is also a clear effort to chill the speech of the Committee Member's political adversaries.

94.     The body that issued this subpoena is composed of 9 members, 7 of whom belong to

the political party that opposed the President Dr. Eastman was known to support, and the other two of whom are well-known intra-party opponents of that President. .

95.     Allowing an entirely partisan select committee of Congress to subpoena the personal cell phone data of political opponents would work a massive chilling of the associational and free speech rights of citizens.

96.     The subpoena is therefore invalid and unenforceable, and should be quashed.

## COUNT IV
## Violation of Fourth Amendment

97.     Dr. Eastman restates the foregoing paragraphs as if set forth fully herein.

98.     Chairman Thompson's subpoena to Verizon instructs Verizon to produce subscriber information and cell phone data associated with a phone number attributed to Dr. Eastman.

99.     The subscriber information requested includes subscriber names and contact information, authorized users, time of service provided, account changes, associated IP addresses, and other metadata.

100.    The cell phone data requested includes all calls, text messages, and other records of communications associated with that phone number.

101.    Although ambiguous, the subpoena could be interpreted to call so called "cell site information," *i.e.*, information about the physical location of towers with which a device was communicating at a particular time.

102.    The requested data covers three full months: November 1, 2020 through January 31, 2021.

103.    Plaintiff has a reasonable expectation of privacy in his personal cell phone data.

104.    The Fourth Amendment enumerates the right of private individuals to be free from unreasonable search and seizure by the government into their persons, houses, papers, and effects. It also protects a person's reasonable privacy expectations. *Katz v. United States*, 389 U.S. 347, 351

(1967).

105.    The fact that a third party at least temporarily stores a person's cell phone data does not alter his expectation or its reasonableness. *Carpenter*, 138 S. Ct. at 2217.

106.    The Fourth Amendment restricts the ability of the Select Committee to issue sweeping subpoenas untethered from any valid legislative purpose. *See Oklahoma Press Pub. Co. v. Walling*, 327 U.S. 186, 196 (1946).

107.    If the government, including the Select Committee, seeks to obtain documents or data protected by the Fourth Amendment, it must be obtained by consent or otherwise authorized by law. Plaintiff has not provided his consent for Verizon to produce his cell phone data to the J6 Committee. And for the reasons discussed above, Chairman Thompson's subpoena is invalid.

108.    A congressional subpoena must be reasonable. An all-encompassing subpoena for personal, non-official documents falls outside the scope of Congress' legitimate legislative power. *See Mazars*, 140 S. Ct. at 2040 (2020).

109.    Chairman Thompson's subpoena to Verizon is so broad and indefinite as to exceed the lawfully authorized purpose of the J6 Committee. *See McPhaul v. United States*, 364 U.S. 372, 381 (1960). The subpoena contains no limitations seeking to preserve applicable privileges or prevent violations of constitutional rights.

110.    For the J6 Committee to subpoena Verizon for all of Plaintiff's personal cell phone data over the course of three months is entirely unreasonable. Such a request is so broad both temporally and with respect to the collected data, that the J6 Committee exceeds any lawfully authorized purpose.

111.    As the subpoena in question exceeds the lawfully authorized purpose of the J6 Committee, full compliance with such subpoenas would violate Plaintiffs' Fourth Amendment protection against unlawful search and seizure. The subpoenas are thus invalid and unenforceable

## PRAYER FOR RELIEF

Plaintiffs requests that the Court:

a.      Declare that the information sought by the subpoena at issue is in furtherance of law enforcement rather than legislative purposes, and that the subpoena is therefore invalid and unenforceable.

b.      Declare that the J6 Committee is constituted in violation of House Rules, and that any actions taken by the Committee are therefore *ultra vires*.

c.      Declare that the information sought by the subpoena violates the First Amendment rights to freedom of speech, association, assembly, and petition of Plaintiff and those with whom he has been associating, and that the subpoena is therefore invalid and unenforceable.

d.      Declare that the information sought by the subpoena violates the Fourth Amendment right to be free from unreasonable searches and seizures, and that the subpoena is therefore invalid and unenforceable.

e.      Issue a temporary restraining order and/or preliminary injunction, followed by a permanent injunction, enjoining the Defendants and the J6 Committee from enforcing its subpoena;

f.      Issue a temporary restraining order and/or preliminary injunction, followed by a permanent injunction, enjoining Verizon from complying with Chairman Thompson's subpoena;

g.      Award to Plaintiff his reasonable costs and expenses, including attorneys' fees;

h.      Grant any other preliminary and permanent relief that the Court deems just, proper, and equitable and to which Plaintiff is entitled.

December 14, 2021                          Respectfully submitted,

                                          */s/ Charles Burnham*
                                          Charles Burnham (D.C. Bar # 1003464)
                                          BURNHAM & GOROKHOV PLLC
                                          1424 K Street NW, Suite 500
                                          Washington, D.C. 20005
                                          Email: charles@burnhamgorokhov.com
                                          Telephone: (202) 386-6920


                                          *Counsel for Plaintiff  John C. Eastman*